UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

BRADY HANSON, JAYNA MOBLEY,
AMANDA TOTTEN, JULIA MONARCH,
MADISON ANDIS, and ERICA HEREDIA,

     Plaintiffs,

v.                                                                       CASE NO.: 1:20-cv-210

WILCOX VETERINARY CLINIC PLLC,
ROBERT B. WILCOX JR., DVM,
REBECCA WILCOX, KACIE WILCOX
BARBAY, WILCOX VETERINARY
CLINIC 401(K) PLAN, and WILCOX
VETERINARY CLINIC CASH BALANCE
PLAN,

     Defendants.

_____/

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiffs Brady Hanson, DVM, Jayna Mobley, Amanda Totten, Julia Monarch, Madison Andis, and Erica Heredia file this Original Complaint against Defendants Wilcox Veterinary Clinic PLLC, Robert B. Wilcox Jr., DVM, Rebecca Wilcox, Kacie Wilcox Barbay, Wilcox Veterinary Clinic 401(k) Plan, and Wilcox Veterinary Clinic Cash Balance Plan, and in support thereof state as follows:

I.
## INTRODUCTION

1.      Wilcox Veterinary Clinic PLLC ("Wilcox Veterinary Clinic" or the "Clinic") was the Plan Administrator of the Wilcox Veterinary Clinic 401(k) Plan (the "401(k) Plan") and the Wilcox Veterinary Clinic Cash Balance Plan (the "Cash Balance Plan"). Robert B. Wilcox Jr., DVM ("Dr. Wilcox") owned and operated Wilcox Veterinary Clinic, and along with his wife,

Rebecca Wilcox, were Trustees of both the 401(k) Plan and the Cash Balance Plan. Kacie Wilcox Barbay, the daughter of Dr. and Ms. Wilcox, was the person who served as the contact point for employment matters relating to Wilcox Veterinary Clinic and administered or assisted in administering the Plans. Plaintiffs are former employees of Wilcox Veterinary Clinic and were participants in the Plans. In administering the Plans, Defendants failed to adhere to the most rudimentary rules requiring them to furnish Plaintiffs with Plan documents that provided general information about the Plans, the financial performance of the Plans, and Plaintiffs' individual holdings, among other things. As Trustees, Dr. Wilcox and Ms. Wilcox mismanaged the Plan funds that they had an obligation to hold and invest in a prudent manner and in the best interest of the participants, including Plaintiffs.

2.     As a result of Defendants' breaches of their fiduciary duties to Plaintiffs and their failure to administer the Plans in accordance with federal law, Plaintiffs are entitled to recover losses incurred to the Plans and their individual accounts, civil penalties, statutory damages, and other equitable remedies.

3.     Other than Brady Hanson, Wilcox Veterinary Clinic paid Plaintiffs an hourly rate for each hour worked. For the times that Plaintiffs worked over forty hours in a workweek, Wilcox Veterinary Clinic did not pay Plaintiffs for the additional time worked. The failure to pay Plaintiffs overtime and at one and one-half times the regular rate is a clear violation of federal law. Accordingly, Plaintiffs (other than Dr. Hanson) seek unpaid wages, liquidated damages, attorneys' fees, and all other relief permitted.

II.
PARTIES

4.     Plaintiff Brady Hanson, DVM ("Dr. Hanson") is an individual who resides in Jefferson County, Texas.

2

5.      Plaintiff Jayna Mobley is an individual who resides in Jefferson County, Texas.

6.      Plaintiff Amanda Totten is an individual who resides in Jefferson County, Texas.

7.      Plaintiff Julia Monarch is an individual who resides in Jefferson County, Texas.

8.      Plaintiff Madison Andis is an individual who resides in Jefferson County, Texas.

9.      Plaintiff Erica Heredia is an individual who resides in Jefferson County, Texas.

10.     Defendant Wilcox Veterinary Clinic PLLC ("Wilcox Veterinary Clinic" or the "Clinic") is a Texas professional limited liability company and may be served through its registered agent, Robert B. Wilcox Jr., DVM, at 761 Baker Avenue, Port Neches, Texas 77651.

11.     Defendant Robert B. Wilcox Jr., DVM ("Dr. Wilcox") is an individual who resides in Jefferson County, Texas and may be served at 761 Baker Avenue, Port Neches, Texas 77651.

12.     Defendant Rebecca Wilcox is an individual who resides in Jefferson County, Texas and may be served at 761 Baker Avenue, Port Neches, Texas 77651.

13.     Defendant Kacie Wilcox Barbay is an individual who resides in Nacogdoches County, Texas and may be served at 230 Sandstone Lane, Nacogdoches, Texas 75965.

14.     Defendant Wilcox Veterinary Clinic 401(k) Plan is an employee benefit plan as defined in 29 U.S.C. §1002(3) that is sponsored and administered by Defendant Wilcox Veterinary Clinic.

15.     Defendant Wilcox Veterinary Clinic Cash Balance Plan is an employee benefit plan as defined in 29 U.S.C. §1002(3) that is sponsored and administered by Defendant Wilcox Veterinary Clinic.

III.
JURISDICTION AND VENUE

16.     This Court has original jurisdiction over this case pursuant to 28 U.S.C. § 1331, as this case arises under the laws of the United States.

17.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this claim arose within this District, and Defendants are subject to personal jurisdiction in Texas.

IV.
FACTS

A.
Defendants' Roles as Plan Fiduciaries

18.     As employees of Wilcox Veterinary Clinic, Plaintiffs became eligible to participate in the 401(k) Plan. They began to make elective deferrals into the plan and to be eligible for additional employer contributions to the plan. With the exception of Dr. Hanson, Plaintiffs were also eligible to participate in the Cash Balance Plan. Accordingly, Plaintiffs became participants in both Plans as contemplated by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 et seq. ("ERISA").

19.     Wilcox Veterinary Clinic is the Plan Administrator and named fiduciary of the 401(k) Plan and the Cash Balance Plan within the meaning of 29 U.S.C. §§ 1002(16) and 1102(a)(2).

20.     Dr. Wilcox, the owner of Wilcox Veterinary Clinic, also identified himself individually as the Plan Administrator for the 401(k) Plan and the Cash Balance Plan in numerous documents related to the Plans. In addition to holding himself out as Plan Administrator, Dr. Wilcox exercised discretionary authority and discretionary control over the management and administration of the Plans and the investment of Plan assets.

21.     As the designated point person for communications and decision-making regarding employee benefit matters, Ms. Barbay performed many of the functions of the Plan Administrator on a day-to-day basis, exercised discretionary authority and discretionary control respecting the

management and administration of the 401(k) Plan and the Cash Balance Plan. Ms. Barbay therefore served as a fiduciary within the meaning of 29 U.S.C. § 1002(21).

22.     As trustees of both the 401(k) Plan and the Cash Balance Plan, Dr. Wilcox and his wife, Ms. Wilcox (collectively, the "Plan Trustees"), had discretionary authority and discretionary control over the investment of assets of both Plans. The Plan Trustees are fiduciaries within the meaning of 29 U.S.C. § 1002(21).

B.
**Defendants' Failure to Provide Routine Disclosure Required by ERISA**

23.     Wilcox Veterinary Clinic, Dr. Wilcox and Ms. Barbay have consistently failed to comply with the most basic fiduciary requirements established by ERISA. As fiduciaries, they are required to administer the Plans for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the Plans and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. 29 U.S.C. § 1104(a)(1). Instead, the Clinic, Dr. Wilcox and Ms. Barbay ignored key elements of ERISA's requirements to provide ongoing disclosure to Plaintiffs about the terms and conditions of the Plans. When Plaintiffs specifically requested this information, they made no effort to provide the requested information within the 30-day period mandated by ERISA and, in fact, made an incomplete disclosure almost two years after the initial request and only in response to multiple requests by Plaintiffs' counsel. As a result, Plaintiffs were left in ignorance of the most basic terms regarding their retirement savings, and Defendants remained unaccountable for their slipshod administration of the Plans that held these retirement savings.

24.     Pursuant to 29 U.S.C. § 1021(a) and § 1022, ERISA requires a plan administrator to provide participants and beneficiaries with a summary plan description ("SPD") in order to inform them of the terms and conditions of a plan, the amount of the benefits to which they are entitled, how to make a claim for benefits and how to enforce their rights under ERISA. An SPD must be provided within 90 days after an individual becomes a participant in an existing plan. 29 U.S.C. § 104(b)(1)(A). Wilcox Veterinary Clinic failed to provide Plaintiffs with an SPD at any time during their participation in the 401(k) Plan and the Cash Balance Plan and, as a result, made it impossible for them to understand the most basic terms of the Plans, including the administrative procedures for bringing claims under the Plans.

25.     ERISA requires a plan administrator to provide participants with ongoing information regarding a plan's financial status. A summary annual report ("SAR") must be provided to each participant within 210 days following the close of each plan year. 29 U.S.C. § 1024(b)(3). Plaintiffs did not receive a summary annual report regarding the 401(k) Plan's and the Cash Balance Plan's financial status during their employment with Wilcox Veterinary Clinic.

26.     ERISA requires a plan administrator of an individual account plan to provide participants with periodic benefit statements at least once per calendar year and upon written request. *See* 29 U.S.C. § 1025(a)(1)(A). Wilcox Veterinary Clinic failed to provide Plaintiffs with periodic benefit statements for the 401(k) Plan and therefore made it impossible for them to determine their account balances. This failure also made it impossible for Plaintiffs to assess whether the earnings on their account balances reflected proper management of 401(k) Plan assets by Dr. Wilcox and Ms. Wilcox, who served as fiduciaries for purposes of the management of the trusts in which the 401(k) Plan assets were invested.

27.     ERISA requires a plan administrator of a defined benefit plan to provide participants with periodic benefit statements at least once every three years and upon written request. *See* 29 U.S.C. § 1025(a)(1)(B). Wilcox Veterinary Clinic failed to provide Plaintiffs with periodic benefit statements for the Cash Balance Plan and therefore made it impossible for them to understand the amount of their nonforfeitable accrued benefits under the Cash Balance Plan.

28.     Defendants' refusal to comply with ERISA's ongoing disclosure obligations compromised Plaintiffs' ability to understand and monitor their retirement savings. This constituted a clear breach of ERISA's disclosure requirements, as well as a breach of fiduciary duty under 29 U.S.C. §§ 1104 and 1109.

C.
Defendants' Refusal to Comply with Plaintiffs' Reasonable Request for Plan Information

29.     ERISA also directs a plan administrator to provide, upon a participant's written request, copies of the latest SPD, SAR, trust agreement, contract or other instruments under which the plan is established or operated. *See* 29 U.S.C. § 1024(b)(4). Wilcox Veterinary Clinic obstinately refused to provide information to which Plaintiffs were entitled and which they reasonably requested.

30.     On April 9, 2018, for example, Plaintiffs' counsel sent a request to Kacie Wilcox Barbay to identify the Plan Administrator in order for Dr. Hanson to begin the process of rolling over his account balance in the 401(k) Plan to a new plan. *See* April 9, 2018 email, attached as **Exhibit 1**. On May 14, 2018, Plaintiffs' counsel sent Ms. Barbay a second request for the name of the Plan Administrator, not only for Dr. Hanson, but for all former employees of Wilcox Veterinary Clinic who now worked for the new company and were participants in the 401(k) Plan and the Cash Balance Plan. *Id.* On May 15, 2018, Plaintiffs' counsel specifically requested (i) the written plan document, (ii) the summary plan description, (iii) individual benefit statements, and (iv)

annual reports "on behalf of Dr. Hanson as well as the employees of the Wilcox Veterinary Center." *See* May 15, 2018 email, attached as **Exhibit 2**. This request was a reasonable request for information, as contemplated by 29 U.S.C. § 1024(b)(4).

31.     In response to the request for specific plan documents, Ms. Barbay refused to provide any information for the 401(k) Plan and the Cash Balance Plan other that Dr. Hanson's individual documents. *Id.* Ms. Barbay added that she instructed the 401(k) Plan's recordkeeper not to provide Plaintiffs' counsel any information for the other employees. *Id.* Ms. Barbay later admitted that she overlooked the language in counsel's email requesting that the employees' plan documents be sent directly to her and she then promised to distribute the information as soon as she received it from the Plans' recordkeeper. *See* May 15, 2018 email, attached as **Exhibit 3**. Ms. Barbay never kept her word.

32.     Wilcox Veterinary Clinic eventually provided Dr. Hanson with his 401(k) Plan benefit statements for the 2014 to 2016 years pursuant to the May 2018 request. However, Dr. Hanson did not receive the summary plan description or summary annual reports until April 13, 2020 upon yet another request for the information. The other former employees of Wilcox Veterinary Clinic, including Ms. Mobley, Ms. Totten, Ms. Monarch, Ms. Andis, and Ms. Heredia, have never been provided with the requested documents for the 401(k) Plan and the Cash Balance Plan despite representations from Ms. Barbay that she would supply the information. *Id.*  In fact, to this date, neither counsel nor any individual Plaintiff has received a copy of the written plan document for either the 401(k) Plan or the Cash Balance Plan. Wilcox Veterinary Clinic not only failed to comply with its obligations under ERISA, but it also demonstrated its clear disregard for ERISA's fiduciary requirements. Ms. Barbay is equally culpable of failing to comply with her

fiduciary obligations under ERISA when she failed to provide this information even after extensive email correspondence with Plaintiffs' counsel.

D.
Defendants' Failure to Comply with ERISA's Fiduciary Requirements Regarding the
Administration of Plan Assets

33.     While the negligence demonstrated by Defendants with regard to ERISA's disclosure requirements is troubling, the cloud of secrecy regarding the investment of Plaintiffs' accounts in the 401(k) Plan raises even more questions about Defendants' disregard for Plaintiffs' interest in availing themselves of the most common tax-advantaged method to save for retirement.

34.     In an individual account plan such as the 401(k) Plan, the investment of account balances and the concomitant production of earnings income are important components in building retirement security for individual participants. The 401(k) Plan sponsored by Wilcox Veterinary Clinic does not permit Plaintiffs to direct the investment of their accounts. Instead, Plaintiffs were forced to rely on Dr. Wilcox and his wife, Ms. Wilcox, who served as Plan Trustees, to invest Plan assets, including not only employer contributions but also Plaintiffs' own elective deferral contributions.  However, without SPDs or SARs, Plaintiffs had no reason to know that Dr. Wilcox and Ms. Wilcox were managing the investment of their retirement savings. Plaintiffs were given no information about the Plan Trustees' qualifications to make investment decisions or the vehicles they chose as appropriate investments for the Plans. Without access to the regular informative account statements mandated by 29 U.S.C. § 1025, Plaintiffs also had no opportunity to study or to understand the manner in which their accounts were being invested. Thus, Plaintiffs were required to place blind faith in the ability of the Plan Trustees to oversee their retirement savings.

35.     As fiduciaries of the Plans, the Plan Trustees were required to discharge their duties to the Plans solely in the interest of participants, including Plaintiffs, and for the exclusive purpose

of providing benefits to participants and defraying reasonable administrative expenses of the Plans. 29 U.S.C. § 1104(a)(1)(A). Fiduciary duties are to be discharged "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).  ERISA expressly states that fiduciaries are required to "diversif[y] the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so." 29 U.S.C. § 1104(a)(1)(C).

36.     The 401(k) Plan SARs finally obtained from Wilcox Veterinary Clinic, however, show that the Plan Trustees fell far short of their fiduciary duties.[1] The earnings history of the Plan is particularly strange.

| PLAN YEAR | PLAN ASSETS | EARNINGS | EARNINGS AS A PERCENTAGE OF PLAN ASSETS |
|-----------|-------------|----------|-----------------------------------------|
| 2014 | $295,564 | $5,534 | 1.9% |
| 2015 | $472,679 | ($8,859) | -1.9% |
| 2016 | $679,462 | $23,959 | 3.5% |
| 2017 | $955,627 | $100,743 | 10.5% |

37.     As of December 2014, the 401(k) Plan had assets totaling $295,564, but only netted earnings of $5,534 for that year. The 2015 SAR shows even more dismal returns, with a loss of $8,859 reported in lieu of earnings. The Plan's performance in subsequent years seems erratic, with alleged earnings of $100,743 in 2017, a mere two years following a year in which the Plan registered a loss in earnings. At a minimum, these dubious results indicate that the Plan Trustees did not focus on increasing Plaintiffs' account balances through sound investment practices. A more worrisome fact, however, is that the largest amount of earnings was reported in 2017, the same year in which Dr. Hanson purchased the assets of Wilcox Veterinary Clinic. This raises the

---

[1] Wilcox Veterinary Clinic still has not provided SARs for the Cash Balance Plan.

possibility that the Plan Trustees may have invested 401(k) Plan assets in their own business, a clear act of self-dealing that would normally be prohibited by ERISA. See 29 U.S.C. § 1106.

38.     Dr. Hanson's individual account statements show that his account balance followed the erratic earnings pattern outlined in the SARs. In 2014 Dr. Hanson's 401(k) Plan account earned less than 2 percent, while in 2015 a loss was posted to his account. The account experienced a modest gain in 2016 and an unexplained improvement in earnings in 2017, again following the pattern outlined in the SARs. Dr. Hanson's account statements shed no light on the manner in which the funds are invested other than a reference to a "pooled account" and "receivable." These account statements are, at the very least, ambiguous with regard to the investment of Dr. Hanson's retirement savings. The SPD is similarly uninformative, stating only that the Plan assets are held in a Trust Fund without identifying where the Trust Fund is held and how Plan assets are invested. Simply stated, neither Wilcox Veterinary Clinic nor the Plan Trustees provided any discernible mechanism for Dr. Hanson or any other Plaintiff to understand how retirement savings were invested and to evaluate whether participation in the Plan was an appropriate use of their income.

39.     There is little doubt that the other Plaintiffs' individual benefit statements will show the same neglect of the Plan Trustees in managing the assets of the 401(k) Plan. Furthermore, unlike Dr. Hanson, the remaining Plaintiffs participated in the Cash Balance Plan. Although these Plaintiffs were encouraged to take distributions from the Cash Balance Plan in connection with the termination of their employment, they did so without benefit of an SPD or the account statements to which they were entitled. This is due to Defendants' willful refusal to provide the disclosure information to which they are entitled under ERISA, despite multiple requests over a period of years.

40.     Defendants were entrusted with the management of Plaintiffs' retirement savings under two tax-advantaged qualified retirement savings plans. They failed at every turn to exercise the fiduciary responsibility assigned to them by ERISA. They broke faith with employees who sought to participate in the Plan as a way to save for the future. Without adequate information and in the absence of competent fiduciary management, Plaintiffs have no confidence that their savings for retirement have been prudently managed or that they will result in adequate retirement savings.

E.
Defendants' Failure to Vest Participants as a Result of the Partial Termination of the Plans

41.     Under 26 U.S.C. § 411(d)(3) and Rev. Ruling 2007-43, a qualified plan that experiences a partial termination due to significant employee turnover is required to vest the account balances of all affected participants. Under long-established standards, the Internal Revenue Service considers a turnover rate of at least 20 percent to trigger a partial termination.

42.     On December 21, 2017, South Texas Veterinary Clinic PLLC purchased certain assets of Wilcox Veterinary Clinic. Shortly thereafter, Plaintiffs terminated employment with Wilcox Veterinary Clinic. This transaction resulted in an employee turnover rate that exceeded 20 percent of participants in the Plans. As a result, Wilcox Veterinary Clinic was required to take such actions as may be necessary to ensure that all affected participants, including Plaintiffs, became fully vested in each Plan.

43.     Upon information and belief, Wilcox Veterinary Clinic, in its capacity as Plan Sponsor, failed to take the steps necessary to vest all affected participants, including Plaintiffs, in the 401(k) Plan and the Cash Balance Plan.  As a result, Plaintiffs did not receive all of the benefits due to them under the Plans. Plaintiffs are therefore entitled to seek payment of all benefits due to them under the Plans pursuant to 29 U.S.C. § 1132(a)(1)(B).

44.     Upon information and belief, Wilcox Veterinary Clinic, Dr. Wilcox, Ms. Wilcox and Ms. Barbay, in their roles as fiduciaries of the Plans who were charged in acting in the sole interest of participants, failed to take the steps necessary to ensure that Plaintiffs received the entire amount of benefits due to them under the Plans. Defendants are personally liable for the restitution of the amount of the account balances that should have been vested as a result of the partial termination of the Plans. See 29 U.S.C. § 1109.

F.
Defendants' Failure to Pay Overtime

45.     Wilcox Veterinary Clinic is subject to the overtime provisions of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 et seq. ("FLSA").

46.     Wilcox Veterinary Clinic provided veterinary services for clients throughout the United States and received compensation from its clients for these services that were delivered across state lines. At all times relevant to this litigation, the Clinic had annual gross volume of sales that exceeded $500,000.

47.     Wilcox Veterinary Clinic employed Ms. Mobley, Ms. Totten, Ms. Monarch, Ms. Andis, and Ms. Heredia (collectively, the "Hourly Wage Plaintiffs") as hourly workers.

48.     At all relevant times, Wilcox Veterinary Clinic was an "employer" within the meaning of 29 U.S.C. § 203(d), and "enterprise" within the meaning of 29 U.S.C. § 203(r), and "engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1).

49.     Wilcox Veterinary Clinic paid the Hourly Wage Plaintiffs a regular hourly rate for all hours worked.

50.     The Hourly Wage Plaintiffs are not exempt from the FLSA because they were paid on an hourly basis and should be compensated for appropriate overtime.

51.     During their employment with Wilcox Veterinary Clinic, the Hourly Wage Plaintiffs regularly worked in excess of forty hours in a workweek.

52.     The Hourly Wage Plaintiffs were not paid on a salary basis because they were paid an hourly rate for the exact number of hours they worked.

53.     If an Hourly Wage Plaintiff worked less than forty hours in a week, she would be paid only for the hours she worked that week at her regular hourly rate.

54.     Wilcox Veterinary Clinic failed to pay the Hourly Wage Plaintiffs one and one-half times their regular rate of pay for each hour worked in excess of forty hours in a workweek.

55.     The Hourly Wage Plaintiffs often questioned Dr. Wilcox or Ms. Barbay regarding the amount of their pay for a given time period and were either not provided with information to verify the number hours they worked in a workweek or were provided a link to website and a password that never worked.

56.     Wilcox Veterinary Clinic's practices violated the FLSA. As a result of these unlawful practices, the Hourly Wage Plaintiffs suffered a loss of wages.

57.     Wilcox Veterinary Clinic knowingly failed to compensate the Hourly Wage Plaintiffs for appropriate overtime and showed a reckless disregard that this practice was in violation of the law. As such, the Clinic willfully violated the FLSA.

V.
CAUSE OF ACTION—FAILURE TO PROVIDE SUMMARY PLAN DESCRIPTIONS

58.     Plaintiffs incorporate each of the foregoing paragraphs as if they were fully set forth herein.

59.     Under 29 U.S.C. § 1022(A), every participant in an employee benefit plan is entitled to receive an SPD that is "sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan."

60.     ERISA requires a plan administrator to furnish an SPD to each participant within 90 days of the individual's becoming a participant in a plan. A plan administrator must also furnish subsequent SPDs integrating all intervening plan amendments to each participant every fifth year. 29 U.S.C. § 1024(b)(1).

61.     Wilcox Veterinary Clinic failed to provide Plaintiffs with SPDs within 90 days of their becoming participants in the Plans or at any other time.

62.     The failure to provide an SPD deprived Plaintiffs of the opportunity to understand the terms and conditions of the benefits due to them under the 401(k) Plan and the Cash Balance Plan, and made it impossible for them to pursue, let alone exhaust, administrative remedies to obtain relief.

63.     These acts and omissions prejudiced Plaintiffs by precluding their understanding of the 401(k) Plan and the Cash Balance Plan and preventing them from taking the steps necessary to supplement their retirement savings.

64.     Plaintiffs request that the Court order Defendants to (i) provide all Plaintiffs with relevant SPDs, (ii) reinstate any Plaintiffs desirous of continuing participation in the Cash Balance Plan with the opportunity to reinstate their accounts and continue accruing a benefit under the Cash Balance Plan, including the opportunity to have their benefits under such Plan to be recalculated, and (iii) permit Plaintiffs in both Plans to file additional claims for benefits under such Plans to reflect any increase in the value of Plan assets obtained as a result of this lawsuit.

VI.
CAUSE OF ACTION – CLAIM FOR CIVIL PENALTIES FOR FAILURE TO
PROVIDE DOCUMENTS FOLLOWING A WRITTEN REQUEST

65.     Plaintiffs incorporate each of the foregoing paragraphs as if they were fully set forth herein.

66.     On May 15, 2018, Plaintiffs requested in writing that Wilcox Veterinary Clinic provide the missing disclosure information that Wilcox Veterinary Clinic, as Plan Administrator of the 401(k) Plan and the Cash Balance Plan, previously failed to provide. The Plan Administrator was required to provide this information within 30 days after the request was made.

67.     The failure by Wilcox Veterinary Clinic and Ms. Barbay to provide this information has deprived Plaintiffs of the information necessary for them to evaluate whether they have actually received the full amount of their account balance from the 401(k) Plan and whether the investment of their account balance was prudent and compliant with the requirements of ERISA. The failure by Wilcox Veterinary Clinic and Ms. Barbay to provide the required disclosure information with regard to the Cash Balance Plan deprived Plaintiffs (other than Dr. Hanson) of critical information about their accrued benefits under the Cash Balance Plan. By failing to provide Plaintiffs with this information, Wilcox Veterinary Clinic and Ms. Barbay have breached their fiduciary duties to Plaintiffs under ERISA, 29 U.S.C. § 1001, et seq., and specifically, but not limited to, 29 U.S.C. § 1104.

68.     Because Wilcox Veterinary Clinic and Kacie Wilcox Barbay failed to provide this information, they are liable to Plaintiffs for civil penalties in an amount up to $100.00 per day from the date of its failure or refusal to send the documents requested by Plaintiffs or such other relief as the Court deems proper. This civil penalty is authorized by 29 U.S.C. § 1132(c)(1)(B).

VII.
CAUSE OF ACTION—BREACH OF FIDUCIARY DUTY IN INVESTING PLAN ASSETS

69.     Plaintiffs incorporate each of the foregoing paragraphs as if they were fully set forth herein.

70.     In contravention of 29 U.S.C. § 1104(a), Dr. Wilcox and Ms. Wilcox breached their fiduciary duties as Plan Trustees to manage the assets of the 401(k) Plan in the sole interest of Plan

participants and with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man in a like capacity and familiar with such matters would use.

71.     Upon information and belief, Dr. Wilcox and Ms. Wilcox breached their fiduciary duty as Plan Trustees by failing to diversify the investment of Plan assets so as to minimize the risk of large losses, as is required by 29 U.S.C. § 1104(a)(1)(C).

72.     Upon information and belief, Dr. Wilcox and Ms. Wilcox breached their fiduciary duty as Plan Trustees by using the assets of the Plans to engage in transactions that are prohibited by 29 U.S.C. § 1106.

73.     Pursuant to 29 U.S.C. 1109, Plaintiffs respectfully request that the Court (i) order Defendants to disgorge any profits and make the Plan whole for any losses incurred as a result of their mismanagement of assets, including, but not limited to, remitting to the Plan an adequate amount of earnings that would reflect the proper investment of Plan assets over time, (ii) bar Plan Trustees and all other Defendants from serving as fiduciaries of the Plans or any other employee benefit plan in the future, (iii) replace Plan Trustees, at their expense, with fiduciaries who, in the judgment of the Court, have the skill, knowledge and prudence to manage both Plans in the manner contemplated by ERISA, (iv) to make such contributions to the Plan as shall be necessary to administer the Plan in accordance with ERISA and (v) to grant such other equitable or remedial relief as the Court may deem appropriate.

VIII.
CAUSE OF ACTION—KNOWING PARTICIPATION

74.     Plaintiffs incorporate each of the foregoing paragraphs as if they were fully set forth herein.

75.     Under ERISA, a non-fiduciary is equally liable to plan participants and beneficiaries as a fiduciary where the non-fiduciary knowingly assists the fiduciary in violating

ERISA or the terms of the plan. 29 U.S.C. § 1132(a)(3). At a minimum, Ms. Barbay is liable to Plaintiffs under the Act for assisting Wilcox Veterinary Clinic breach its fiduciary duties by not providing Plaintiffs copies of the SPDs, SARs, and periodic benefit statements for the 401(k) Plan and the Cash Balance Plan.

76.      Upon information and belief, Ms. Barbay also was intimately familiar with the Plan Trustees' neglectful management and investment of the assets of the 401(k) Plan and the Cash Balance Plan. Besides failing to protect the participants and beneficiaries of the Plans, Ms. Barbay knowingly assisted the Plan Trustees in breaching their fiduciary duties to Plaintiffs. As a result of Ms. Barbay's assistance, the Plans' investments were significantly impacted.

77.      Pursuant to 29 U.S.C. §§ 1109 and 1132(c), Ms. Barbay is personally liable to Plaintiffs for the breaches of fiduciary duty in which she knowingly participated and for the damages described above.

IX.
CAUSE OF ACTION – CLAIM FOR BENEFITS DUE UNDER PLANS

78.      Plaintiffs incorporate each of the foregoing paragraphs as if they were fully set forth herein.

79.      The 401(k) Plan and the Cash Balance Plan each experienced a partial termination of employment in December 2017 as a result of an employee turnover rate that was at least equal to 20 percent. Upon information and belief, Defendants failed to take such actions as were necessary to vest Plaintiffs in their account balances in each Plan.

80.      Plaintiffs respectfully request the Court to (i) declare that they are fully vested in their account balances in the Plans, (ii) waive the requirement of exhaustion of administrative procedures for making a claim for benefits due to Defendants' failure to provide SPDs that would

have provided such information, and (iii) award Plaintiffs the full amount of the vested benefits to which they are entitled under each Plan.

X.
CAUSE OF ACTION—FAILURE TO PAY OVERTIME

81.     Plaintiffs incorporate each of the foregoing paragraphs as if they were fully set forth herein.

82.     The FLSA requires covered employers to pay non-exempt employees no less than one and one-half times their regular rate of pay for all hours worked in excess of forty in a workweek. 29 U.S.C. § 207.

83.     Wilcox Veterinary Clinic is an "enterprise" as defined by the FLSA, 29 U.S.C. § 203(r)(1), and is engaged in commerce within the meaning of the FLSA, § 203(b), (s)(1).

84.     The Hourly Wage Plaintiffs are non-exempt covered employees. 29 U.S.C. § 203(e)(1).

85.     The Hourly Wage Plaintiffs have worked more than forty hours per week for Wilcox Veterinary Clinic during the applicable time period.

86.     Wilcox Veterinary Clinic has not properly compensated the Hourly Wage Plaintiffs for their overtime hours as required by the FLSA.

87.     Wilcox Veterinary Clinic failed to make a good-faith effort to comply with the FLSA as it relates to the compensation of the Hourly Wage Plaintiffs.

88.     Wilcox Veterinary Clinic knew the Hourly Wage Plaintiffs worked overtime without proper compensation, and it willfully failed and refused to pay the Hourly Wage Plaintiffs wages at the required overtime rates. *See* 29 U.S.C. § 255.

89.     Wilcox Veterinary Clinic's willful failure and refusal to pay the Hourly Wage Plaintiffs overtime wages for time worked violates FLSA. 29 U.S.C. § 207.

90.     By failing to record, report, and preserve records of hours worked by the Hourly Wage Plaintiffs, Wilcox Veterinary Clinic failed to make, keep, and preserve records with respect to each of its employees sufficient to determine their wages, hours, and other conditions of employment, in violation of the FLSA. 29 U.S.C. §255(a).

91.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. § 255(a).

92.     As a direct and proximate result of Wilcox Veterinary Clinic's unlawful conduct, the Hourly Wage Plaintiffs have suffered and will continue to suffer a loss of income and other damages. The Hourly Wage Plaintiffs are entitled to liquidated damages and attorneys' fees and costs incurred in connection with this claim.

XI.
JURY DEMAND

93.     Plaintiffs exercise their right to a jury.

XII.
PRAYER

Plaintiffs respectfully request that the Court enter judgment against Defendants on Plaintiffs' ERISA claims as follows:

(a)  Judgment against Defendants in Plaintiffs' favor with regard to Plaintiffs' claims pleaded under ERISA, including civil penalties under 29 U.S.C. § 1132(c)(1)(B) and other equitable relief;

(b)  Attorneys' fees pursuant to 29 U.S.C. § 1132(g);

(c)  Costs of court and other appropriate expenses;

(d)  Pre-judgment and post-judgment interest; and

(e)  Such other and further relief as this Court deems appropriate.

The Hourly Wage Plaintiffs respectfully request that the Court enter judgment against Wilcox Veterinary Clinic on the Hourly Wage Plaintiffs' FLSA claims as follows:

(a)  Judgment against Wilcox Veterinary Clinic for violations of the overtime provisions of the FLSA;

(b) Judgment against Wilcox Veterinary Clinic for an amount equal to the Hourly Wage Plaintiffs' unpaid back wages at the applicable overtime rates;

(c) A finding that Wilcox Veterinary Clinic's violations of the FLSA were willful;

(d) An amount equal to the Hourly Wage Plaintiffs' damages as liquidated damages;

(e) Attorneys' fees pursuant to 29 U.S.C. § 1132(g);

(f)  Costs of court and other appropriate expenses;

(g) Pre-judgment and post-judgment interest;

(h) Leave to amend to add claims under applicable state laws; and

(i)  Such other and further relief as this Court deems appropriate.

Dated: May 15, 2020

Respectfully submitted,

**JOHNSEN LAW PLLC**

*/s/ Tamara D. Stiner Toomer*
Tamara D. Stiner Toomer, Attorney-In-Charge
Texas Bar No. 24043940
tamara@johnsenlaw.com
Christopher Johnsen
Texas Bar No. 24072169
chris@johnsenlaw.com
316 East Main Street, Suite 2D
Humble, Texas 77338
Telephone: (832) 786-8646

*Counsel for Plaintiffs*